UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY LEE HENRICUS,<br><br>            Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No. 2:14-cv-2699-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff's disability ended on August 1, 2012.  (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, and plaintiff subsequently filed a reply brief.  (ECF Nos. 18, 19.)

////

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 11, 12.)

Having carefully considered the parties' briefing, the record, and the applicable law, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.    BACKGROUND

Plaintiff was born on February 11, 1960, has a high school education, is able to communicate in English, and previously worked as a tire repairer and lawn sprinkler installer.[2] (Administrative Transcript ("AT") 17, 91, 178, 198, 200.) On November 15, 2010, plaintiff applied for DIB, alleging that his disability began on November 3, 2010, and that he was disabled due to back, neck, and shoulder impairments; carpal tunnel syndrome; and depression. (AT 12, 91, 180, 199.) After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on February 27, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 12, 26-63.) In a partially favorable decision dated May 21, 2013, the ALJ determined that plaintiff had been disabled under the Act from November 3, 2010, plaintiff's alleged disability onset date, through July 31, 2012, but that as a result of medical improvement, plaintiff's disability ended on August 1, 2012. (AT 12-21.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 23, 2014. (AT 1-3.) Plaintiff then filed this action in federal district court on November 17, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff contends that the ALJ, in concluding that plaintiff's disability ended on August 1, 2012, improperly evaluated the opinion evidence by rejecting: (1) certain postural limitations assessed by plaintiff's treating providers; and (2) certain mental limitations assessed by the consultative examining psychologist.[3]

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff also argues that the residual functional capacity assessment for the post-July 31, 2012

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

A.   Summary of the ALJ's Findings

In evaluating plaintiff's entitlement to DIB,[4] the ALJ found that, as a result of plaintiff's severe impairments of lumbar spine degenerative disc disease, cervical spine disease, carpal tunnel syndrome, depression, obesity, and left shoulder impingement, plaintiff had been under a disability, as defined in the Act, from November 3, 2010, through July 31, 2012. (AT 15, 18.) However, the ALJ determined that medical improvement occurred as of August 1, 2012, and that the medical improvement was related to plaintiff's ability to work. (AT 18-19.) The ALJ

---

period, and the corresponding hypothetical to the VE, were not supported by substantial evidence. However, those arguments are not truly separate issues, because they are premised entirely on the alleged errors in the ALJ's evaluation of the opinion evidence. Additionally, although plaintiff suggests, by way of a passing reference, that the ALJ improperly discredited plaintiff's testimony (ECF No. 15 at 13), that issue is waived, because plaintiff's opening brief failed to argue it with any specificity. See Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).

assessed plaintiff's residual functional capacity ("RFC") as of August 1, 2012, as follows:

> After careful consideration of the entire record, the undersigned finds that, beginning August 1, 2012, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally push and/or pull with the bilateral lower and upper extremities; he cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can occasionally balance, stoop, kneel, crouch, and crawl; he can occasionally reach overhead with the left upper extremity and frequently handle, finger, and feel bilaterally; he must take a five to ten minute break every two hours; and he is limited to simple, repetitive tasks.

(AT 19.) The ALJ further found that, as of August 1, 2012, plaintiff remained unable to perform his past relevant work, but that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 19-20.) Consequently, the ALJ concluded that plaintiff's disability ended on August 1, 2012. (AT 20.)

B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

As noted above, plaintiff contends that the ALJ, in concluding that plaintiff's disability ended on August 1, 2012, improperly evaluated the opinion evidence by rejecting: (1) certain postural limitations assessed by plaintiff's treating providers; and (2) certain mental limitations assessed by the consultative examining psychologist. Each argument is addressed separately below.

(1) Whether the ALJ improperly rejected certain postural limitations assessed by plaintiff's treating providers

On February 25, 2013, two of plaintiff's treating providers, Dr. Michael Hembd and his physician's assistant Sarah Zichella, completed a functional capacity assessment. (AT 552-55.) According to that assessment, plaintiff could sit for up to 6 hours total, stand for 3 hours total, and walk for 3 hours total in an 8-hour workday; did not need to change positions at will; could sit for 45 minutes at one time, stand for 20 minutes at one time, and walk for 20 minutes at one time before needing to change positions; required a 5-10 minute break every 2 hours; could frequently lift, carry, push, and pull up to 10 pounds and occasionally lift, carry, push, and pull up to 20 pounds; could occasionally balance, kneel, stoop, or bend, but never climb, crouch, or crawl; and

1    could not work at unprotected heights or with moving machinery.  (AT 552-54.)  The assessment
2    indicated that those restrictions were present as of November 3, 2010, plaintiff's alleged disability
3    onset date.  (AT 555.)
4         The ALJ's RFC as of August 1, 2012, adopted many of Dr. Hembd and Ms. Zichella's
5    limitations, but plaintiff specifically challenges the ALJ's failure to incorporate into the RFC the
6    postural limitations that plaintiff could only sit for 45 minutes at one time, stand for 20 minutes at
7    one time, and walk for 20 minutes at one time before needing to change positions.  For the
8    reasons discussed below, the ALJ properly rejected such limitations.
9         On November 3, 2010, plaintiff's alleged disability onset date, plaintiff slipped and fell at
10   work, injuring his low back, neck, left shoulder, and right wrist.  (AT 525-26.)  After that
11   accident, plaintiff suffered from severe low back pain and limitation of motion, with numbness
12   and pain radiating down his legs; neck pain and stiffness; left shoulder pain with limitation of
13   motion and weakness; and numbness of both hands.  (AT 529.)  Plaintiff's symptoms were
14   attributable to sprain and tear injuries suffered as a result of the accident, as well as to cumulative
15   trauma sustained over many years of work as a tire repairer, degenerative disc disease, and carpal
16   tunnel syndrome.  (AT 549.)  Based on plaintiff's pain and other symptoms, which were well
17   documented in the record and supported by clinical findings and diagnostic studies, the ALJ
18   found plaintiff disabled for a closed period from November 3, 2010, to July 31, 2012.  However,
19   as the ALJ observed, the record evidence indicates that significant improvement of plaintiff's
20   impairments was achieved through surgical intervention and other treatment.  (AT 19.)
21        On July 25, 2011, plaintiff underwent lumbar spine surgery to address his back and leg
22   pain.  (AT 471, 506.)  Subsequently, on December 6, 2011, his treating spine surgeon, Dr.
23   Christopher Neubuerger, noted that plaintiff was doing well, and although he still experienced
24   some pain, plaintiff could walk up to 2 miles, could do more bending and twisting, could do some
25   heavier housework and other activities, and could return to the gym.  (AT 458-59.)  On February
26   28, 2012, Dr. Neubuerger indicated that plaintiff was doing well from a leg symptom and low
27   back perspective, although plaintiff complained of more soreness in the thoracic spine.  (AT 575.)
28   Plaintiff was going to the gym, and doing some weightlifting and swimming.  (Id.)  Dr.

1  Neubuerger stated that plaintiff may still have shoulder surgery by another provider, but that he
2  was stable and doing well from a spine surgical perspective, and that he could return on an as-
3  needed basis.  (AT 576.)  On April 11, 2012, plaintiff underwent left shoulder arthroscopic
4  surgery and left carpal tunnel release surgery performed by treating orthopedic surgeon, Dr. Peter
5  von Rogov.  (AT 667.)

6  Shortly thereafter, on April 13, 2012, plaintiff established care with Dr. Hembd and Ms.
7  Zichella, who worked in the physical medicine and rehabilitation section of Dr. Neubuerger's
8  practice.  (AT 569.)  Plaintiff reported continuing neck pain and thoracic spine pain, but stated
9  that he felt "much better" in regards to his back and legs.  (Id.)  Upon examination, plaintiff had
10 no tenderness over the lumbosacral vertebrae, a "very good range of motion of his back," and a
11 negative straight leg raising test.  (AT 570.)  Plaintiff's movements of the neck were restricted,
12 but this was partially due to his body habitus.  (Id.)  Dr. Hembd and Ms. Zichella recommended
13 physical therapy for continued improvement of flexibility and tolerance, and noted that Dr. von
14 Rogov would continue to treat plaintiff's shoulder impairment and carpal tunnel syndrome.  (AT
15 571.)  They opined that, with respect to plaintiff's lumbar spine, he could perform moderate duty,
16 could lift/push/pull up to 30 pounds, could occasionally bend/twist/squat, and had to change
17 positions as needed.  (Id.)

18 At a subsequent May 25, 2012 visit with Dr. Hembd and Ms. Zichella, plaintiff again
19 stated that his lumbar spine was doing well, and that his major pain complaints related to the
20 cervical and thoracic spine.  (AT 566.)  Plaintiff expressed concern that, given the restrictions
21 previously assessed by Dr. Hembd and Ms. Zichella, it would be difficult for him to get social
22 security benefits.  (Id.)  Nonetheless, Dr. Hembd and Ms. Zichella indicated that they thought
23 their prior restrictions were appropriate, although they apparently lowered the 30 pound lifting
24 restriction to 20 pounds.  (AT 567.)  They also found a physical therapy regimen appropriate for
25 plaintiff's cervical and thoracic spine pain.  (Id.)  On July 5, 2012, Dr. Hembd and Ms. Zichella
26 stated that plaintiff had "permanent work restrictions of 20 pounds," recommended that plaintiff
27 finish his physical therapy and then transition to an independent gym program, and stated that it
28 was unclear whether plaintiff still needed to be seen on a regular basis regarding his stabilized

6

1  lumbar spine.  (AT 564.)

2  Thereafter, on July 18, 2012, Dr. von Rogov noted that plaintiff had demonstrated excellent progressive improvement with regard to his left shoulder and left wrist after surgery, but that he still had carpal tunnel symptoms on the right side and symptoms compatible with cervical radiculopathy.  (AT 671.)  However, a July 20, 2012 electrodiagnostic study ruled out any cervical radiculopathy.  (AT 673-74.)  On September 18, 2012, Dr. von Rogov also successfully performed carpal tunnel release surgery on the right side.  (AT 618-20, 683.)  Two days later, on September 20, 2012, plaintiff returned to Dr. Hembd and Ms. Zichella, stating that he had been walking and going to the gym, but still experienced thoracic spine pain.  (AT 562.)  Dr. Hembd and Ms. Zichella recommended no further treatment with respect to plaintiff's cervical, thoracic, or lumbar spine, and anticipated that a 20 pound lifting restriction would remain appropriate.  (Id.)  Subsequent treatment notes by Dr. Hembd and Ms. Zichella on November 20, 2012, and January 2, 2013, also reflected only a restriction to lifting 20 pounds, indicated that their office was not prescribing plaintiff with any medications, and stated that plaintiff was continuing to see Dr. von Rogov.  (AT 556-61.)

Finally, on March 10, 2013, Dr. von Rogov found that plaintiff had made progressive improvement since his last right carpal tunnel release surgery, with no significant objective findings at either wrist.  (AT 683.)  Plaintiff's shoulder exam was also normal, with excellent range of motion and no tenderness.  (AT 681.)  Plaintiff did have "some neck discomfort at the extremes of all neck motions" with "minimal tenderness about the spinous process of C7."  (Id.)  Dr. von Rogov noted that plaintiff had retired as of February 27, 2013.  (AT 683.)

In light of the above, the ALJ rationally concluded that the record does not support the proposition that plaintiff could only sit for 45 minutes at one time, stand for 20 minutes at one time, and walk for 20 minutes at one time before needing to change positions *as of August 1, 2012*.  To be sure, as Dr. Hembd and Ms. Zichella opined, such limitations may well have existed as of November 3, 2010.  However, as is evident from the medical records discussed above, substantial evidence supports the ALJ's finding that significant improvement of plaintiff's impairments was achieved through surgical intervention and other treatment.  (AT 19.)  To the

extent that Dr. Hembd and Ms. Zichella opined that the above-mentioned postural limitations continued as of August 1, 2012 and beyond, their opinion is conclusory and minimally supported, and can be rejected on that basis. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected). Their assessment contains no clinical findings or rationale in support of such continued postural restrictions, and is actually inconsistent with their own treatment notes, which as of August 1, 2012 and beyond documented only a 20 pound lifting restriction.

Therefore, the ALJ properly rejected such postural limitations as of August 1, 2012.[5]

(2) Whether the ALJ improperly rejected certain mental limitations assessed by the consultative examining psychologist

On April 8, 2011, plaintiff was evaluated by consultative examining psychologist Dr. Genevieve Monks. (AT 374-79.) Plaintiff informed Dr. Monks that he had stopped working because of his medical problems and because of problems with his boss; that his depression began when his pain increased and he was unable to do anything; and that he experienced anxiety in the form of a panic attack about once every six months due to financial concerns. (AT 374-75.) Upon examination, plaintiff was clean, adequately groomed, and fully oriented with good eye contact, a positive and cooperative attitude, logical and goal-directed thought processes, normal speech, a depressed mood with a normal affect, average intellectual functioning, good memory, normal concentration, fair insight, and good judgment. (AT 376-77.) Dr. Monks diagnosed a dysthymic disorder (depression) and an anxiety disorder. (AT 377.) She opined that plaintiff could manage his own funds; had a good ability to understand/remember/carry out very short and simple instructions, remember detailed and complex instructions, and sustain an ordinary routine

---

[5] Contrary to plaintiff's contention, the Commissioner, by addressing treatment records not specifically cited by the ALJ, does not request the court to affirm the ALJ's decision on a different, independent ground. The ALJ here reasonably summarized the treatment records, and plainly found, in light of plaintiff's medical improvement, that the record as of August 1, 2012 did not support additional limitations beyond those assessed in the ALJ's RFC. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Thus, the Commissioner's discussion of additional treatment records, which are in the administrative record before the court, merely bolsters the ALJ's existing grounds for the decision.

without special supervision; had a fair ability to maintain concentration and attention, accept instructions from a supervisor and respond appropriately, and interact with coworkers; and a fair to poor ability to complete a normal workday or workweek without interruptions at a consistent pace and deal with various changes in the work setting. (AT 378.) Dr. Monks further opined that plaintiff had a minimal to moderate likelihood of emotionally deteriorating in the work environment. (Id.) She explained that the likelihood of plaintiff's mental condition improving within the next 12 months was fair if his medical problems resolved. (Id.)

As of August 1, 2012, the ALJ limited plaintiff to simple, repetitive tasks. (AT 19.) Plaintiff argues that the mental component of the ALJ's RFC improperly omits Dr. Monks's limitations that plaintiff had a fair to poor ability to (a) complete a normal workday or workweek without interruptions at a consistent pace and (b) deal with various changes in the work setting. That argument is unpersuasive.

Plaintiff fails to explain why those limitations, when considered in the context of Dr. Monks's assessment as a whole, are necessarily inconsistent with the ALJ's restriction to simple, repetitive tasks. The Ninth Circuit has observed that an ALJ may synthesize and translate assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also 20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your limitations"). Simple, repetitive tasks logically involve less change and mental stamina, and are therefore easier to sustain. Particularly given Dr. Monks's vague and ambiguous "fair to poor" limitation, it was reasonable for the ALJ to conclude that a restriction to simple, repetitive tasks adequately accounted for plaintiff's mental limitations related to endurance and changes in the work setting. Notably, that interpretation is also consistent with Dr. Monks's own finding that plaintiff had a good ability to *sustain* an ordinary routine without special supervision.

Moreover, Dr. Monks's opinion was issued on April 8, 2011, prior to plaintiff's July 2011 lumbar spine surgery and more than a year prior to August 1, 2012, when plaintiff's disability was found to have ceased. Since the issuance of Dr. Monks's opinion, plaintiff's medical condition significantly improved, as discussed above. Plaintiff himself described his depression

and anxiety as largely attributable to his physical problems, and Dr. Monks specifically indicated that there was a fair chance that plaintiff's mental condition would improve if his physical conditions improved. (AT 374-75, 378.) Therefore, the ALJ reasonably found that plaintiff was capable of at least simple, repetitive tasks as of August 1, 2012.

V.      <u>CONCLUSION</u>

In sum, the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is GRANTED.

3. The Commissioner's final decision is AFFIRMED and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: January 29, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE